No. 25-8001

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

AMAZON.COM INC. AND AMAZON.COM
SERVICES, LLC

              Defendants-Petitioners,

              v.

TANYA N. SVOBODA and
ANTONELLA M. ORTIZ COLOSI,

              Plaintiffs-Respondents.

Petition for Permission to
Appeal from the United States
District Court for the
Northern District of Illinois
(No. 1:21-cv-05336)
Honorable Jorge L. Alonso

---

## PLAINTIFFS-RESPONDENTS' ANSWER IN OPPOSITION
## TO AMAZON'S PETITION FOR PERMISSION TO APPEAL

Keith Keogh*
Timothy J. Sostrin
Theodore Kuyper
KEOGH LAW, LTD.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
(312) 726-1092
(312) 726-1093 (fax)
Keith@Keoghlaw.com
tsostrin@keoghlaw.com
tkuyper@keoghlaw.com

*Attorneys for Plaintiff-Respondents*

*\* Counsel of Record*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-8001

Short Caption: Amazon.com, Inc., et al v. Tanya Svoboda, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Tanya N. Svoboda and Antonella M. Ortiz Colosi

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Keogh Law, Ltd.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Keith J Keogh    Date: 2/5/2025

Attorney's Printed Name: Keith J. Keogh

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑  **No** ☐

Address: 55 W. Monroe Street, Suite 3390

Chicago, IL 60603

Phone Number: 312-726-1092    Fax Number: 312-726-1093

E-Mail Address: Keith@Keoghlaw.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-8001

Short Caption: Amazon.com, Inc., et al v. Tanya Svoboda, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Tanya N. Svoboda and Antonella M. Ortiz Colosi

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Keogh Law, Ltd.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Timothy J. Sostrin    Date: 2/5/2025

Attorney's Printed Name: Timothy J. Sostrin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address: 55 W. Monroe Street, Suite 3390

Chicago, IL 60603

Phone Number: 312-726-1092    Fax Number: 312-726-1093

E-Mail Address: Tsostrin@Keoghlaw.com

rev. 12/19 AK

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-8001

Short Caption: Amazon.com, Inc., et al v. Tanya Svoboda, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Tanya N. Svoboda and Antonella M. Ortiz Colosi

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Keogh Law, Ltd.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Theodore H. Kuyper      Date: 2/5/2025

Attorney's Printed Name: Theodore H. Kuyper

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 55 W. Monroe Street, Suite 3390

    Chicago, IL 60603

Phone Number: 312-726-1092      Fax Number: 312-726-1093

E-Mail Address: Tkuyper@Keoghlaw.com

# TABLE OF CONTENTS

SUMMARY OF OPPOSITION ................................................................................. 1

BACKGROUND ................................................................................................... 3

   1.   The Biometric Information Privacy Act ............................................. 3

   2.   Amazon's Virtual Try-On Features (VTOs) Collect Biometric Data ............... 5

   3.   The VTO Works Uniformly for Everyone ............................................. 5

   4.   Amazon's Records Show Who Used the VTO and Where ................................ 6

   5.   Procedural History ............................................................... 7

INTERLOCUTORY REVIEW IS UNNECESSARY AND INAPPROPRIATE ........... 7

   I.   This is Not a Bet the Company Lawsuit ............................................. 7

   II.   This Case does not present a Fundamental Issue of Class Action Law that
has Escaped Appellate Review ...................................................... 10

        A.   This Class Action is Superior to Individual Actions .................. 11

        B.   Amazon's Concerns about Identifying Class Members do Not
Defeat Predominance or Superiority ......................................... 13

        C.   The Damages Calculation Will Proceed on a Classwide Basis
and Does Not Require Individualized Inquiries ....................... 17

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Patel v. Facebook, Inc.,*
  932 F.3d 1264 (9th Cir. 2019) ........................................................................................2

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997) ......................................................................................................12

*Bais Yaakov of Spring Valley v. ACT, Inc.,*
  12 F.4th 81 (1st Cir. 2021) ...........................................................................................20

*Barnes v. Air Line Pilots Ass'n,*
  310 F.R.D. 551 (N.D. Ill. 2015) ....................................................................................12

*Bayeg v. Admiral at the Lake,*
  2024 IL App (1st) 231141 ...............................................................................................3

*Beaton v. SpeedyPC Software,*
  907 F.3d 1018 (7th Cir. 2018) ................................................................................16, 17

*Blair v. Equifax Check,*
  181 F.3d 832 (7th Cir. 1999) ..................................................................................passim

*Cent. Mut. Ins. Co. v. Tracy's Treasures, Inc.,*
  19 N.E.3d 1100 (Ill. App. Ct. 1st Dist. 2014) ...............................................................18

*Chapman v. Wagener Equities, Inc.,*
  747 F.3d 489 (7th Cir. 2014) ...........................................................................................8

*Cothron v. White Castle Sys.,*
  2023 IL 128004 ...........................................................................................5, 17, 18, 19

*Creative Montessori Learning Centers v. Ashford Gear, LLC,*
  662 F.3d 913 (7th Cir. 2011) ...........................................................................................8

*Driver v. AppleIllinois, LLC,*
  739 F.3d 1073 (7th Cir. 2014) .......................................................................................10

*Gordon v. Boden,*
  586 N.E.2d 461 (Ill. App. Ct. 1st Dist. 1991) ...............................................................15

*Hamilton v. O'Connor Chevrolet, Inc.,*
  2006 U.S. Dist. LEXIS 44149 (N.D. Ill. June 12, 2006) ...............................................13

*Harper v. Sheriff,*
  581 F.3d 511 (7th Cir. 2009) ...................................................................2

*Haynes v. Logan Furniture Mart, Inc.,*
  503 F.2d 1161 (7th Cir. 1974) ...............................................................12

*In re Facebook Biometric Info. Privacy Litig.,*
  326 F.R.D. 535 (N.D. Cal. 2018) ..............................................................2

*In re Lorazepam & Clorazepate Antitrust Litig.,*
  289 F.3d 98 (D.C. Cir. 2002) ...................................................................9

*In re BNSF Railway Co.,*
  No. 22-8003 (April 11, 2022) ...................................................................1

*In re Workeasy Software, LLC,*
  No. 24-8004 (April 8, 2024) ......................................................................1

*Mastercard Int'l Inc. v. Scoma Chiropractic, P.A.,*
  2022 U.S. App. LEXIS 6844 (11th Cir. Mar. 16, 2022)...............................14

*Mullins v. Direct Digital, LLC,*
  795 F.3d 654 (7th Cir. 2015) .........................................................passim

*Murray v. GMAC Mortg. Corp.,*
  434 F.3d 948 (7th Cir. 2006) ........................................................5, 8, 18

*Prado-Steiman v. Bush,*
  221 F.3d 1266 (11th Cir. 2000) .....................................................9, 20

*Reliable Money Order, Inc. v. McKnight Sales,*
  704 F.3d 489 (7th Cir. 2013)...................................................................2

*Rogers v. Bnsf Ry. Co.,*
  2022 U.S. Dist. LEXIS 50847 (N.D. Ill. Mar. 22, 2022).................................1

*Schwab v. Philip Morris USA, Inc.,*
  2005 U.S. Dist. LEXIS 27469 (E.D.N.Y. Nov. 14, 2005)...............................15

*Simer v. Rios,*
  661 F.2d 655 (7th Cir. 1981) ........................................................14, 15

*Smith v. Ill. Cent. R.R. Co.,*
  223 Ill. 2d 441 (2006).............................................................................3

*Std. Iron Works v. ArcelorMittal*,
2015 U.S. Dist. LEXIS 119652 (N.D. Ill. Sep. 9, 2015)................................13

*Suchanek v. Sturm Foods*,
764 F.3d 750 (7th Cir. 2014) ...................................................... 11, 12, 14

*Tapia-Rendon v. United Tape & Finishing Co. Inc.*,
2024 U.S. Dist. LEXIS18948 (N.D. Ill. Feb. 2, 2024)...........................11, 18

*Toney v. Quality Res., Inc.*,
323 F.R.D. 567 (N.D. Ill. 2018) ...................................................................20

## Rules

Federal Rule of Civil Procedure 23...................................................................passim

## Statutes

Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14 *et seq.* ...............1, 3, 4

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227............................18

## Other Authorities

2 Newberg and Rubenstein on Class Actions § 4:70 (6th ed.) ......................................11

https://www.nasdaq.com/market-activity/stocks/amzn
(last visited February 5, 2025)...................................................................3, 9

<u>SUMMARY OF OPPOSITION</u>

Amazon's Rule 23(f) petition is not well taken as every class certification issue it raises has long been settled by this Court, which is why every court to address them in a Biometric Information Privacy Act (BIPA) case has followed Seventh Circuit precedent and certified substantially identically classes. This appeal does not facilitate the development of law on fundamental issues about class actions nor does certification create a bet company situation. *See Blair v. Equifax Check* 181 F.3d 832, 834-35 (7th Cir. 1999). Indeed, this Court has recently rejected 23(f) petitions in BIPA cases that make the same arguments Amazon makes here. *See In re BNSF Railway Co.*, No. 22-8003 (April 11, 2022) (Denying 23(f) petition); *In re Workeasy Software, LLC*, No. 24-8004 (April 8, 2024) (Denying 23(f) petition).

This action alleges Amazon collected the class member's biometric data without notice and consent through its Virtual Try-On Feature in violation of BIPA, 740 ILCS 14 *et seq*. As noted above, Plaintiffs are not aware of a single court that has denied class certification in a BIPA case—and for good reason. All BIPA cases ultimately involve software that uses biometrics and functions uniformly for everyone, making BIPA claims "well-suited for class treatment"

> "[T]he questions of law and fact underlying the class members' BIPA claims are essentially identical and will be premised on common proof. Specifically, the common issue of demonstrating [defendant] operated the [technology at issue] . . . in violation of BIPA will predominate over any potential individualized issues."

*Rogers v. Bnsf Ry. Co.*, 2022 U.S. Dist. LEXIS 50847, at *8-9 (N.D. Ill. Mar. 22, 2022). As another court held,

> "[T]here is no doubt that a template-based class poses common

legal and factual questions, namely: did [the defendant]'s . . . technology [at issue] harvest biometric identifiers as contemplated under BIPA, and if so, did [the defendant] give users prior notice of these practices and obtain their consent?"

*In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018),

*aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019);

In this case, after extensive briefing, including rounds of additional authority that contained argument, and an in-person hearing, the District Court exercised its discretion and certified the following class: "all individuals who used a virtual try-on feature on Amazon's mobile website or app while in Illinois on or after September 7, 2016." Opinion at 33. The District Court's Order is thorough and well-reasoned, grounded in Seventh Circuit precedent, and consistent with due process. Amazon subsequently moved for reconsideration, which the Court denied after full briefing. There is no abuse of discretion and no grounds for interlocutory appeal. *Harper v. Sheriff*, 581 F.3d 511, 514 (7th Cir. 2009)( This Court reviews decisions to certify a class for an abuse of discretion).

As noted above, there are two scenarios in which interlocutory review of an order granting class certification is appropriate under Rule 23(f). *Blair* supra, at 834-35.[1] First is the "bet the company" scenario wherein "the stakes are large and the risk of a settlement or other disposition that does not reflect the merits of the claims is substantial." *Id.* at 834-35. Yet Amazon, among the largest companies in the world, has a market capitalization of approximately $2.5 trillion dollars as of

---

[1] *Blair* provides the fundamental analysis for Rule 23(f) appeals in this Circuit. *Reliable Money Order, Inc. v. McKnight Sales*, 704 F.3d 489, 497 (7th Cir. 2013).

February 5, 2025.[2]  Even accepting Amazon's estimate of the maximum possible

damages in this case,[3] its potential liability represents *less than .1%* of its worth,

and thus does not force Amazon to make a "bet the company" decision.  Further, the

District Court made no errors of law but instead followed this Court's precedent.

Thus, there is "no point to an interlocutory appeal." *Id.* at 835.

The second scenario justifying interlocutory review is when an appeal would

facilitate the development of law on "fundamental issues about class actions" that

"have not received appellate treatment." *Id.*  Yet the very issues that Amazon raises

in its petition have already been repeatedly and thoroughly addressed by this

Court.[4]  Amazon does not raise anything new that justifies an interlocutory appeal.

<u>BACKGROUND</u>

1.    The Biometric Information Privacy Act

The past two decades have seen explosive growth in the use of biometric data.

Recognizing the unique irreplaceable nature of biometric data, and the evolving

understanding of the ways in which it can be used, Illinois enacted BIPA to provide

heightened biometric privacy protections. *See* 740 ILCS 14/5(c)-(g).

BIPA's informed consent regime created by Section 15(b), prohibits

---

[2] See, https://www.nasdaq.com/market-activity/stocks/amzn (last visited February 5, 2025)

[3] Amazon contends the maximum possible recovery for each of the approximately 160,000 known class members averages out to $60,000, for a total maximum possible recovery of $9.6 billion.  This calculation of course ignores Amazon's argument that damages are discretionary.

[4] Likewise, Illinois' class certification rules are modeled after Rule 23 (*Smith v. Ill. Cent. R.R. Co.*, 223 Ill. 2d 441, 447-48 (2006)) and the First District Illinois Appellate Court recently affirmed class certification of BIPA claims. *Bayeg v Admiral at the Lake*, 2024 IL App (1st) 231141.

companies from "collect[ing], captur[ing], . . . or otherwise obtain[ing] a person's or customer's" biometric data unless the company first: (1) informs the person in writing whether biometric data is being collected or stored; (2) informs the person in writing of the specific purpose and length of term for which the biometric data is being collected, stored, and used; and (3) receives a written release executed by the person consenting to their biometric data being collected, captured, or otherwise obtained, as the case may be, and any related actions disclosed to the person in writing. *See* 740 ILCS 14/15(b); *see also id.* § 10.

Section 15(a), in turn, requires companies "in possession of" biometric data to develop and comply with a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric data when the initial purpose for capturing or obtaining such data has been satisfied, or within three years of the individual's last interaction with the company, whichever occurs first. *Id.* § 15(a).

The Act provides for statutory damages in the amount of $1,000 for negligent violations and $5,000 for reckless or intentional violations. 740 ILCS 14/20(1)-(2). While a claim accrues under the Act "with every scan or transmission of biometric identifiers or biometric information without prior informed consent," the Illinois Supreme Court has held that "a trial court presiding over a [BIPA] class action—a creature of equity—would certainly possess the discretion to fashion a damage award that (1) fairly compensated claiming class members and (2) included an amount designed to deter future violations, without destroying defendant's

business." *Cothron v. White Castle Sys.*, 2023 IL 128004, ¶ 42, 466 Ill. Dec. 85, 96, 216 N.E.3d 918, 929.

Amazon argues this ruling makes damages "discretionary," however it reflects only the well-established principle that while excessive damages arguments do not defeat class certification, a court may reduce a statutory damages award after trial on due process grounds. *See e.g.*, *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953-54 (7th Cir. 2006) ("An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified.")

### 2. Amazon's Virtual Try-On Features (VTOs) Collect Biometric Data

Amazon sells products to consumers on its mobile website and shopping app where consumers are able to virtually "try on" certain products. The virtual try-on features at issue here (each a "VTO," collectively the "VTOs") can be used to try on makeup and eyewear. Opinion at 4.

The VTOs combine biometric data captured from the real-world (*e.g.* location of lips on a person's face) using a facial geometry scan, with computer-generated perceptual information (*e.g.* a virtual lipstick or other product). *Id.* at 4, 5. For instance, for beauty products, the VTO captures approximately 20 two-dimensional landmarks for the boundaries of the lip region. *Id.* at 5.

### 3. The VTO Works Uniformly for Everyone.

For all of the VTOs, the user begins by clicking a "Try On" (or similar) button on an Amazon product page. At that point, a live video stream of the user's face is

submitted via the camera on the person's device. These processes were the same for everyone who used the VTOs. *Ibid.*

All of the VTOs use software to detect and capture the VTO users' facial features, such as "facial geometry measurements," and use that facial data in order to determine where to overlay the virtual products. This process was the same for everyone. *Id.* at 12 ("each VTO uses the same augmented reality process to map facial landmarks")

Plaintiffs both used the VTOs to virtually try on products while in Illinois. Plaintiff Tanya Svoboda used a VTO on Amazon's website to virtually try on multiple lipstick products while in Illinois. Plaintiff Antonella Ortiz Colosi likewise used a VTO on Amazon's app to virtually try on various types of makeup products while in Illinois. *Id.* at 6. Plaintiffs are not alone - there are at least 160,000 persons who used a VTO on Amazon's platforms while in Illinois during the class period. *Ibid.*

4. Amazon's Records Show Who Used the VTO and Where

Amazon concedes it records an VTO use when the shopper is logged into their Amazon account or when the shopper adds an item to their cart. In both instances, Amazon maintains name, address, and payment method information for the user. Pet. at 5.

In addition, Amazon maintains several data points bearing on the location of the user: billing addresses, IP addresses, and geo-location data associated with the VTO use. The District Court found these data points were generally reliable, as

the majority of VTO records with an Illinois billing address also have an Illinois IP address according to Amazon's geo-locator data. Opinion at 21-22. Accordingly, the District Court found that Illinois billing addresses, IP addresses, and geo-location data will identify persons who used the VTOs while in Illinois, and claim-form affidavits can serve as an additional cross-check to the extent there is any doubt. *Ibid.*

### 5. Procedural History

Plaintiffs moved for class certification on August 2, 2022 (Doc. 173). After full briefing on the motion, the District Court reviewed supplemental briefing, including sur-replies from both parties, and the filing of supplemental authority. Docs 262, 268, 280-284. In addition, the District Court conducted an in-person hearing with oral argument on the motion on January 10, 2024.

On March 30, 2024, the District Court exercised its discretion and entered the order certifying the class. Doc. 278. Amazon moved for reconsideration on April 11, 2024. Doc. 295. After full briefing on that motion, the Court denied reconsideration on January 6, 2025. Doc. 365. This petition for leave to appeal followed.

## INTERLOCUTORY REVIEW IS UNWARRANTED

Amazon's arguments for review are not persuasive. Ultimately, there is no point to interlocutory review of the District Court's class certification order because this case does not present any fundamental issues of class action law that have escaped appellate review and there is no undue pressure on Amazon to settle.

Rather, the District Court's opinion is a sound application of its discretion and this Court's precedent.

I.      This is Not a Bet the Company Lawsuit

Amazon argues interlocutory appeal is necessary because class certification imposes "an immediate and severe *in terrorem* effect" upon it. Pet. at 2. Yet "reducing recoveries by forcing everyone to litigate independently--so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims--has little to recommend it." *Murray*, 434 F.3d at 954.

Moreover, this Court's precedent shows that the critical factor is not the raw dollar amount of a possible judgment, but rather *the relative risk to the defendant* that such a judgment would impose. *See Blair*, 181 F.3d at 843 (referring to the "bet their company" scenario); *Creative Montessori Learning Centers v. Ashford Gear, LLC*, 662 F.3d 913, 916 (7th Cir. 2011) (remarking that the defendant had 3 employees and annual sales of only a half-million dollars, yet faced over $11 million in liability).

Conclusory assertions about settlement pressure are not enough without evidence of the defendant's ability to pay. *See Chapman v. Wagener Equities, Inc.*, 747 F.3d 489, 491 (7th Cir. 2014) ("But the defendants haven't told us what their assets are—just that the corporate defendant is 'a small family owned business.' It is no doubt small in relation to such family-owned businesses as Koch Industries and Walmart, but maybe not so small that a contingent liability of $15 million

would force it to settle."); *Blair*, 181 F.3d at 834 ("Rule 23(f) gives appellate courts discretion to entertain appeals in 'death knell' cases—though we must be wary lest the mind hear a bell that is not tolling.")

To show an appeal is warranted, the petitioner must offer solid proof of "the size of the putative class and any record evidence regarding the financial resources of the defendant." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1274 (11th Cir. 2000). An appeal is unwarranted where, "[o]ther than mere assertions, [the petitioner] makes no showing that it will be unduly pressured to settle because of the class's certification." *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 108 (D.C. Cir. 2002) (rejecting appeal where petitioner "failed to submit any evidence that the damages claimed would force a company of its size to settle without relation to the merits").

Amazon does not attempt to satisfy this burden, nor could it. As of the date of this filing, Amazon's market capitalization is approximately $2.5 trillion dollars.[5] Even accepting Amazon's estimate of the maximum possible damages in this case,[6] its potential liability represents *less than .1%* of its worth, and thus does not force Amazon to make a "bet the company" decision. Moreover, Amazon's estimation of the risk conveniently ignores its own contentions that damages are discretionary

---

[5] See, https://www.nasdaq.com/market-activity/stocks/amzn (last visited February 5, 2025)

[6] Amazon contends the maximum possible recovery for each of the approximately 160,000 known class members averages out to $60,000, for a total maximum possible recovery of $9.6 billion. This calculation of course ignores Amazon's argument that damages are discretionary.

and cannot be awarded on a per scan basis in any case. See Pet. at 10-11, n.1.

Amazon's generic assertions about settlement pressure do not merit interlocutory

review.

## II. This Case does not present a Fundamental Issue of Class Action Law that has Escaped Appellate Review

In *Blair*, this Court noted "some fundamental issues about class actions are

poorly developed" "[b]ecause a large proportion of class actions settles or is resolved

in a way that overtakes procedural matters." *Blair*, 181 F.3d at 835. Where such

issues "have not received appellate treatment", an interlocutory appeal may be

appropriate. *Id.* at 835, 838 ("That neither side can point to any precedent in

support of its position implies that this is one of the issues that has evaded

appellate resolution.") In this case, however, clear precedent is dispositive of the

issues raised.

Indeed, rather than identifying a "fundamental issue about class actions,"

(*ibid.*) Amazon relies exclusively on the fact that this Court has not *addressed BIPA*

in the class action context. Yet this Court has never recognized an opportunity to

develop *substantive law* as proper basis for an interlocutory appeal. *See Driver v.*

*AppleIllinois, LLC*, 739 F.3d 1073, 1076 (7th Cir. 2014) ("A recognized ground for

granting a Rule 23(f) petition is that deciding the appeal would *clarify class action*

*law.*") (emphasis added) (citing *Blair*, 181 F.3d at 835).

In any event, the District Court's decision soundly applies this Court's

precedent on the precise issues Amazon raises here.

A.    This Class Action is Superior to Individual Actions

Citing their maximum possible recovery (an average of $60,000), Amazon argues "the relief available to individual class members clearly incentivizes individual proceedings" and therefore makes individual actions superior to a class action. Pet. at 10.  Of course, Amazon also argues on the same pages that damages are discretionary and cannot be awarded on a per scan basis. Pet. at 10-11, n.1.

Regardless, as the District Court recognized when it exercised its discretion, not a single member of the class has sued Amazon individually. Opinion at 30; *see also* 2 Newberg and Rubenstein on Class Actions § 4:70 (6th ed.) ("[A] complete lack of other litigation concerning the matter at hand supports the conclusion that a class action would be superior to individual litigation." (collecting cases)); *see also Suchanek v. Sturm Foods*, 764 F.3d 750, 760 (7th Cir. 2014) ("[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all.")

Nor could class members be reasonably be expected to sue individually given the prohibitive costs of doing so.  As the District Court noted, the Plaintiffs in this class action had at the time of briefing class certification already expended substantial expert costs in the six figures just to analyze Amazon's software. *Opinion* at 30; s*ee also Tapia-Rendon v. United Tape & Finishing Co. Inc.*, 2024 U.S. Dist. LEXIS18948, * 12 (N.D. Ill. Feb. 2, 2024) ("BIPA litigation, if carried through to  conclusion, is costly and time-consuming.")

Thus, contrary to Amazon's assertions, the District Court was well within its

discretion to find "no rational individual plaintiff would be willing to bear the costs of [the] lawsuit." *Ibid.* (quoting *Suchanek*, 764 F.3d at 760.  As the District Court held, "very few individual could or would expend such costs." *Ibid.*

In any event, "the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).  Thus, "relatively substantial recovery awaiting [some class members], standing alone, does not defeat superiority." *Barnes v. Air Line Pilots Ass'n*, 310 F.R.D. 551, 562 (N.D. Ill. 2015).

Indeed, this Court long ago rejected the argument that sufficient incentives for individual actions from potentially substantial statutory damages awards precluded the use of the class action device. *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir. 1974).  As the Court reasoned, "the argument that the incentive for individual litigation precludes class action litigation assumes that the incentive solely relates to consumer motivation to sue rather than to creditor compliance with the Act. To the contrary, the purpose of enacting the statutory minimum damage provision was as much to induce creditor compliance with the Act as to provide incentives for private litigants." *Ibid.* The Court explained further, "while procedural fairness with respect to protecting defendants from crushing damages predicated on the statutory minimum recovery is an important consideration in determining the superiority of the class action mode of adjudication, it is at least equally important to prevent violators of the Act from limiting recovery to a few individuals where actual, wide-spread noncompliance is

found to exist." *Ibid.*

In short, in analyzing superiority, the Court "must recognize both the costs *and benefits* of the class device." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015). "Courts should take a 'practical, on-the-ground assessment of whether the proposed efficiencies from a class action will outweigh the administrative problems and inefficiencies expected to ensure.'" *Std. Iron Works v. ArcelorMittal*, 2015 U.S. Dist. LEXIS 119652, at *40 (N.D. Ill. Sep. 9, 2015) (quoting *Hamilton v. O'Connor Chevrolet, Inc.*, 2006 U.S. Dist. LEXIS 44149, at *45 (N.D. Ill. June 12, 2006)). The District Court did exactly that in this case and exercised its discretion to find a class action superior because the "potential class comprises over 160,000 individuals, all with virtually identical claims that will involve common proof." Opinion at 31. Importantly, the Court found that "class proceedings will resolve liability, ensure uniformity of decision, avoid duplicative resolution of complex common issues, preserve party and judicial resources, and promote efficiency." *Ibid.* There was no abuse of discretion in this decision.

B.    Amazon's Concerns about Identifying Class Members do Not Defeat Predominance or Superiority

Amazon argues that determining whether persons used the VTO "while in Illinois" presents individual issues that defeat the predominance prong of Rule 23(b). Yet the certified class is defined as "all individuals who used a virtual try-on feature on Amazon's mobile website or app while in Illinois on or after September 7, 2016." Accordingly, determining whether a person used the VTO "while in Illinois" is a question of identifying class members, not of predominance. *See Mastercard*

*Int'l Inc. v. Scoma Chiropractic, P.A.,* 2022 U.S. App. LEXIS 6844, at *5 (11th Cir. Mar. 16, 2022) ("individual issues required to identify class members are part of the manageability criterion, not the predominance inquiry, which merely tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The district court did not abuse its discretion in holding that once all the class members in the Fax Machine Subclass are identified, the subclass will be sufficiently cohesive to warrant adjudication in a class action.") (internal citations omitted); *see also Mullins*, 795 F.3d at 663 (questions of class member identification should be addressed through the manageability criterion of the superiority requirement).

As for manageability, the law in this Circuit is clear:

> "refusing to certify on manageability grounds alone should be the last resort. *See Carnegie*, 376 F.3d at 661 ('a class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all'), quoted in *Suchanek*, 764 F.3d at 760. In all events, deciding whether and when to insist on details, and how many details, are matters for the sound discretion of district judges who have so much first-hand experience managing class actions."

*Mullins*, 795 F.3d at 664.

Indeed, Rule 23 itself "recognizes it might be impossible to identify some class members[.]" *Mullins*, 795 F.3d at 665. There is thus a long history of class certification where it's impossible to identify the class. *See Simer v. Rios*, 661 F.2d 655, 675 (7th Cir. 1981) ("fluid recovery is used where the individuals injured are not likely to come forward and prove their claims or cannot be given notice of the

case"); *id.* at 676 (adopting "case-by-case analysis" of use of fluid recovery that turns on "an assessment of to what extent the statute embodies policies of deterrence, disgorgement, and compensation"); *Gordon v. Boden*, 586 N.E.2d 461, 468 (Ill. App. Ct. 1st Dist. 1991) (agreeing with *Simer*, concluding "the fluid recovery mechanism is permissible in Illinois" and "is not inherently unconstitutional," holding "fluid recovery is available" in Illinois Consumer Fraud Act class action as the Act, like BIPA, "is a clear mandate from the . . . legislature that our courts utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties"); *Schwab v. Philip Morris USA, Inc.*, 2005 U.S. Dist. LEXIS 27469, at *12, *66 (E.D.N.Y. Nov. 14, 2005) ("Fluid recovery is consistent with the text and spirit of Rule 23" and "would not deprive the defendants of their right to due process or of their Seventh Amendment right to a trial by jury") (internal citation omitted).

In *Mullins*, this Court thoroughly considered whether an administratively feasible methodology for identifying class members is a requirement for class certification and concluded it is not. The court held that manageability concerns about class member identification are insufficient to deny class certification and best addressed during the claims administration stage, when the court can rely on affidavits or other creative solutions to identify the class. *Mullins*, 795 F.3d at 663-64. The *Mullins* court further rejected the notion that due process requires perfect accuracy in the identification of the class. *Id.* at 670; *see also Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1030 (7th Cir. 2018) (class certification proper because

"individualized inquiries could be handled through 'streamlined mechanisms' such as affidavits and proper auditing procedures").

In this case, after extensive review of the evidence, the District Court found that it "does not share Amazon's concerns that identifying class members who used VTO in Illinois renders the class unmanageable." Opinion at 21-22. In particular, the District Court found that Amazon's own records of "Illinois billing addresses, IP addresses from which the VTO was used, and geo-location data identifying the region of the user based on the IP address will identify persons who used the VTOs while in Illinois, and claim-form affidavits can serve as an additional cross-check." *Id.* at 21. The Court was right to do so, as it found that "[t]he majority of [VTO] records with an Illinois billing address also have an Illinois IP address according to Amazon's geo-locator data, which Plaintiffs contend corroborate the reliability of the records." *Ibid.* The District Court's decision to certify a class on these facts was a sound exercise of its discretion.

Amazon's argument that its records are underinclusive because they don't show *everyone* who used a VTO (Pet. at 12) is not a sound basis to deny class certification either. In other words, since not everyone may recover, no one should recover. "Due process simply does not require the ability to identify all members of the class at the certification stage." *Mullins*, 795 F.3d at 665. Moreover, "refusing to certify on this basis effectively immunizes defendants from liability because they chose not to maintain records of the relevant transactions," and it ignores an "important policy objective of class actions: deterring and punishing corporate

wrongdoing." *Id.* at 668.

Amazon argues *Mullins* and *Beaton* are distinguishable because those cases involved "low value claims " that "only a lunatic or a fanatic" would litigate individually" (Pet. at 13), yet the same is true here. The District Court found "the statutory damages available under BIPA have not been a sufficient incentive for a single member of the proposed class to sue Amazon individually," and "[v]ery few individuals could or would expend" the amount to pursue an individual case that Class counsel has invested so far in this class action. *Opinion* at 30. This is even more true as every defendant is arguing *Cothron* allows the court to use its discretion to award nothing for statutory damages. Only a fanatic would hire an expert and litigate an individual claim against Amazon when there is a chance a court would award zero recovery in statutory damages even after a finding of liability.

C.    The Damages Calculation Will Proceed on a Classwide Basis and Does Not Require Individualized Inquiries

Lastly, Amazon argues the "discretion to fashion a damage award" under BIPA (*Cothron*, 2023 IL 128004, ¶ 42) cannot be exercised on a classwide basis because individual issues predominate that analysis. Yet it fails to explain how so nor does it cite any authority that supports its contention.

As noted above, *Cothron* held "'[a] trial court presiding over a class action—a creature of equity—would certainly possess the discretion to fashion a damage award that (1) fairly compensated claiming class members and (2) included an amount designed to deter future violations, without destroying defendant's

business.'" *Ibid.* (quoting *Cent. Mut. Ins. Co. v. Tracy's Treasures, Inc.*, 19 N.E.3d 1100, 1118 (Ill. App. Ct. 1st Dist. 2014)).

Nothing in *Cothron*, which was a class action, suggests this discretion creates individual issues. Far from it, the court was clearly referring to a due process reduction based on the defendant's *overall* conduct—*after* classwide damages are assessed. To be sure, the relevant holding in *Cothron* quoted *Tracy's Treasures*, which itself referred only to a due-process remittitur after classwide damages are assessed. *Tracy's Treasures*, 19 N.E.3d at 1118 (¶ 72) citing *Murray*). Likewise, this Court's decision in *Murray* referred only to a due-process remittitur after classwide damages are assessed, concluding that "[a]n award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied *after* a class has been certified. Then a judge may evaluate the defendant's *overall conduct* and control its *total* exposure." *Murray*, 434 F.3d at 954 (emphasis added).[7]

In other words, "*Cothron* does not mean that [liquidated damages under BIPA] cannot be awarded in a common class-wide manner." *Tapia-Rendon*, 2023 U.S. Dist. LEXIS 142773 at *17. In *Tapia-Rendon*, the defendant argued "individualized damages assessment for each individual class member" defeated class certification, but the court held that argument "overstates the impact of *Cothron*." *Id.* The court held "the number of violations of the BIPA is likely to be

---

[7] *Tracy's Treasures* was a class action brought under the Telephone Consumer Protection Act ("TCPA"). 47 U.S.C. § 227(b)(1), which has no discretionary damages and therefore did not involve discretionary awards of individual damages.

easily ascertainable, as the nature of the violations is alleged to be the same from class member to class member," "the request is for liquidated damages under the statute, and there is every reason to believe that these will be assessed on a common per-scan basis across the class." *Id.* at *17-18.

So too here. Plaintiffs seek statutory damages that will be assessed on a common, per-scan basis because the nature of the violations (use of a VTO on an Amazon platform) and resulting privacy invasion is the same for all Class members. Nothing more is required.

Moreover, Amazon fails to identify any individualized damages considerations that could possibly predominate this action. It claims only that the user of VTO features varied "in terms of the actual overlay being applied (lip products or eyewear products) and in terms of user experience" some shoppers used VTO features only a handful of times; other used it more than a thousand times." Pet. at 15. Nowhere does Amazon explain how the specific product overlayed has any bearing on damages (it doesn't) or how the number of times the VTO was used necessitates an individualized damages calculation beyond a simple administrative per-scan calculation. In short, Amazon offers nothing more than undeveloped speculation that individualized issues predominate this action, which cannot serve as a basis to deny certification. *See Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 89 (1st Cir. 2021) ("In deciding whether individual issues predominate over common questions, a court must not rely on mere speculation that individual issues may arise."); *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 587 (N.D. Ill. 2018)

("[A]llowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases 'wide latitude to inject frivolous issues to bolster or undermine a finding of predominance.'" (citation omitted)).

CONCLUSION

Amazon's petition for Rule 23(f) review should be denied. Interlocutory appeals are inherently 'disruptive, time-consuming, and expensive.'" *Prado-Steiman*, 221 F.3d at 1276. They "increase[] the workload of the appellate courts, to the detriment of litigants and judges," "require the appellate courts to consider issues that may be rendered moot," and "undermine the district court's ability to manage the action." *Id.* Where, as here, the petitioner has presented no serious legal issues worthy of this Court's discretionary review, the better course is to await an appeal from a final judgment in the case.

Respectfully submitted,

/s/ Timothy J. Sostrin
Attorney for Plaintiffs-Respondents

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 5(c)(1) because this petition contains 5,174 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f).

2. This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) as modified by Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook size 12 font.

Dated: February 5, 2025

/s/ Timothy J. Sostrin
Attorney for Plaintiffs-Respondents